T.C. Memo. 2013-295

UNITED STATES TAX COURT

JAMES CURTIS BREWER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22587-11.                    Filed December 30, 2013.

<u>Frank Agostino</u>, <u>Lawrence Brody</u>, <u>Jairo G. Cano</u>, and <u>Chrystal Loyer</u>, for petitioner.

<u>Robert W. Mopsick</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WELLS, <u>Judge</u>:  Respondent determined a deficiency of $7,680 in petitioner's Federal income tax for his 2008 tax year.[1]  During trial, petitioner

_____

[1]Unless otherwise indicated, section references are to the Internal Revenue
(continued...)

[*2] conceded that his State tax refund of $1,106 is taxable and should be included in his 2008 taxable income.[2] After petitioner's concession, the only issue that we must decide is whether petitioner is entitled to the first-time homebuyer credit (FTHBC), pursuant to section 36, of $7,500 for his 2008 tax year.

## FINDINGS OF FACT

Some of the facts and certain exhibits have been stipulated. The parties' stipulations of facts are incorporated in this opinion by reference and are found accordingly. Petitioner resided in New Jersey at the time he filed his petition.

For at least the past 11 years, petitioner has been employed as an internal revenue officer by the Internal Revenue Service (IRS) in Edison, New Jersey.

## I.    Petitioner's Residences

On January 21, 2005, petitioner purchased a residential condo with one bedroom and one bathroom in Staten Island, New York (Staten Island property). Petitioner lived at the Staten Island property until June 2005, when he moved in

---

[1](...continued)
Code of 1986, as amended and in effect for the year in issue, and Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

[2]Remaining adjustments set forth by respondent in the notice of deficiency depend on a Rule 155 computation, which we order below, and need not be addressed in this opinion.

[*3] with Armenia Lorenzo (Ms. Lorenzo), his "significant other" at that time,[3] at her home in Elizabeth, New Jersey (Elizabeth property). Petitioner moved to the Elizabeth property because he felt it was more convenient for his commute to his workplace and for Ms. Lorenzo's commute to her school, both of which were in New Jersey. After he moved out of the Staten Island property during June 2005, petitioner did not return to reside there.

Petitioner obtained a mailbox at The UPS Store No. 2947 in Edison, New Jersey (UPS mailbox). Petitioner used the UPS mailbox to receive all of his mail because he thought that he previously had been a victim of mail theft and credit card fraud. Also during June 2005, petitioner obtained a New Jersey driver's license, which listed the UPS mailbox as his address. Petitioner attended church in New Jersey.

At or about the time petitioner moved out of the Staten Island property during June 2005, Katherine Brewer (Ms. Brewer), petitioner's sister who is a student at New York City Technical College in Brooklyn, moved into the Staten Island property. Ms. Brewer continued to reside at the Staten Island property through 2007 but did not pay rent to petitioner at any time from 2005 to 2007.

---

[3]Petitioner eventually married Ms. Lorenzo on June 21, 2008, but divorced her before trial. Accordingly, we continue to refer to her as "Ms. Lorenzo".

**[*4]** During August 2006, petitioner temporarily moved to Brooklyn to live with his mother in Brooklyn, New York (Brooklyn property), because of relationship problems with Ms. Lorenzo. Petitioner and Ms. Lorenzo resolved their problems and, three months after moving to the Brooklyn property, petitioner returned to the Elizabeth property.

On November 20, 2008, petitioner and Ms. Lorenzo purchased a single-family home in Avenel, New Jersey (Avenel property). In connection with the purchase, petitioner's realtor completed a Form HUD-1, Uniform Settlement Statement (Form HUD-1), and listed petitioner's Staten Island property as the address of the borrower. As of the date of trial, petitioner continued to own the Avenel property jointly with Ms. Lorenzo.

II.     Petitioner's Tax Returns

For his 2005 tax year petitioner filed a New York State part-year resident tax return and a New Jersey State part-year resident tax return, because he worked in New Jersey but resided at both the Staten Island property and the Elizabeth property during 2005.

For his 2006 tax year petitioner filed a New York State part-year resident tax return and a New Jersey State part-year resident tax return, because he worked in New Jersey but resided at both the Brooklyn property and the Elizabeth

[*5] property during 2006. On his 2006 Federal income tax return, petitioner listed the Staten Island property as his address and claimed deductions for real estate taxes and mortgage interest in connection with the Staten Island property.

For his 2007 tax year petitioner filed only a New Jersey State resident tax return, because he resided only at the Elizabeth property during 2007. On his 2007 Federal income tax return petitioner listed the UPS mailbox as his address and claimed deductions for real estate taxes and mortgage interest in connection with the Staten Island property.

For his 2008 tax year petitioner filed only a New Jersey State resident tax return, because he resided only at the Elizabeth property during 2008. On April 15, 2009, petitioner and Ms. Lorenzo filed a joint Federal income tax return for their 2008 tax year. On their 2008 joint Federal income tax return petitioner and Ms. Lorenzo listed the Avenel property as their address and claimed an FTHBC pursuant to section 36 of $7,500, in connection with the purchase of the Avenel property.

On July 5, 2011, respondent sent petitioner a notice of deficiency determining that petitioner owed a deficiency of $7,680 for his 2008 tax year upon disallowance of petitioner's claim of an FTHBC. On October 3, 2011, petitioner timely filed a petition in this Court.

**[*6]**                                         OPINION

Generally, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer has the burden of proving it incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Section 7491(a)(1) provides an exception that shifts the burden of proof to the Commissioner as to any factual issue relevant to a taxpayer's liability for tax if: (1) the taxpayer introduces credible evidence with respect to that issue; and (2) the taxpayer satisfies certain other conditions, including substantiation of any item and cooperation with the Government's requests for witnesses, documents, other information, and meetings. Sec. 7491(a)(2); see also Rule 142(a)(2). Because we decide the factual issues in the instant case on the preponderance of the evidence, the allocation of the burden of proof is immaterial. See Knudsen v. Commissioner, 131 T.C. 185, 189 (2008).

Section 36(a) allows a credit for a first-time homebuyer of a principal residence. A first-time homebuyer is "any individual if such individual (and if married, such individual's spouse) had no present ownership interest in a principal residence during the three-year period ending on the date of the purchase of the principal residence to which this section applies." Sec. 36(c)(1). Petitioner is eligible as a first-time homebuyer if he did not have an ownership interest in a

**[*7]** principal residence after November 19, 2005, and before November 20, 2008. See Foster v. Commissioner, 138 T.C. 51, 52-53 (2012).

For purposes of the FTHBC, section 36(c)(2) provides that the term "principal residence" has the same meaning as in section 121. Whether a taxpayer uses a property as his or her principal residence depends upon all the facts and circumstances. See sec. 1.121-1(b)(2), Income Tax Regs. Ordinarily, the taxpayer's principal residence is the property the taxpayer uses during most of the year. See id. Section 1.121-1(b)(2), Income Tax Regs., provides:

> (2) Principal residence. * * * In addition to the taxpayer's use of the property, relevant factors in determining a taxpayer's principal residence, include, but are not limited to--
>
> (i) The taxpayer's place of employment;
>
> (ii) The principal place of abode of the taxpayer's family members;
>
> (iii) The address listed on the taxpayer's federal and state tax returns, driver's license, automobile registration, and voter registration card;
>
> (iv) The taxpayer's mailing address for bills and correspondence;
>
> (v) The location of the taxpayer's banks; and
>
> (vi) The location of religious organizations and recreational clubs with which the taxpayer is affiliated.

**[\*8]**   Respondent contends that petitioner was not a first-time homebuyer because, after November 19, 2005, petitioner held an ownership interest in the Staten Island property and used the Staten Island property as his principal residence.  Petitioner does not dispute that he had an ownership interest in the Staten Island property after November 19, 2005, but contends that the Staten Island property ceased to be his principal residence when he moved to the Elizabeth property during June 2005.  Accordingly, the issue that we must decide is whether the Staten Island property was petitioner's principal residence pursuant to sections 36 and 121 at any time after November 19, 2005.

Petitioner testified that he moved out of the Staten Island property and into the Elizabeth property during June 2005.  According to petitioner, he moved to the Elizabeth property because, inter alia, he could spend more time with Ms. Lorenzo and both he and Ms. Lorenzo found their daily commutes to be more convenient.[4] Petitioner testified that he attended church in New Jersey and that he obtained a

---

[4]Respondent contends that petitioner's Staten Island property was closer to his workplace than his Elizabeth property.  Indeed, petitioner does not claim otherwise; however, petitioner claims that the commute to his workplace was more convenient from the Elizabeth property.  While respondent may be properly pointing to the distance of the commute, respondent fails to consider, inter alia, petitioner's travel time, accessibility to freeways, traffic patterns, and mass transit options and limitations from each of the two properties.  On the basis of the record, we conclude that respondent's contention is, at best, inconclusive of the issue of the convenience of petitioner's commute from the respective properties.

**[*9]** New Jersey driver's license at or about the time of his move to the Elizabeth property.[5] According to petitioner, after he moved to the Elizabeth property, he allowed his sister, Ms. Brewer, who is a student, to reside rent free at the Staten Island property, which had only a single bedroom and a single bathroom. Petitioner testified that he never returned to reside at the Staten Island property and, but for a brief stay with his mother at the Brooklyn property, did not reside again in the State of New York. Petitioner married Ms. Lorenzo on June 21, 2008, and they jointly purchased the Avenel property on November 20, 2008.

We may accept a taxpayer's unverified testimony where we find it to be credible and persuasive. Woods v. Commissioner, 137 T.C. 159, 165 (2011); see also Teymourian v. Commissioner, T.C. Memo. 2005-232, 2005 WL 2464602, at *3. We decide whether a witness is credible on the basis of objective facts, the reasonableness of the testimony, and the demeanor and consistency of statements

---

[5]Respondent contends that petitioner's driver's license is irrelevant because (1) it was issued on August 1, 2012, which was four years after the three-year period specified in sec. 36(c)(1), and (2) the address listed on the driver's license is the UPS mailbox. We disagree. Petitioner credibly testified that he obtained the New Jersey driver's license at or about the time he moved to the Elizabeth property and that the driver's license he produced at trial was issued on August 1, 2012, because he had recently renewed the license. Moreover, petitioner offered a plausible explanation for the use of the UPS mailbox as his address on his driver's license; to wit, petitioner was potentially the victim of mail theft and credit card fraud, and he exercised caution by not displaying his home address.

[*10] made by the witness. Quock Ting v. United States, 140 U.S. 417, 420-421 (1891); Wood v. Commissioner, 338 F.2d 602, 605 (9th Cir. 1964), aff'g 41 T.C. 593 (1964); Concord Consumers Hous. Coop. v. Commissioner, 89 T.C. 105, 124 n.21 (1987). We find petitioner to be reasonable and honest and his testimony to be credible and persuasive.[6] We find petitioner's explanations of the inconsistencies argued by respondent to be plausible and his testimony to be consistent with the evidence offered. Accordingly, on the basis of the record, we conclude that the Staten Island property was not petitioner's principal residence pursuant to section 36 at any time after November 19, 2005.

In addition to the evidence to which respondent points, respondent generally objects to petitioner's testimony as "self-serving" and contends that petitioner's testimony is undermined by his failure to call Ms. Brewer, Ms. Lorenzo, or his mother to testify on his behalf, as well as his failure to produce bills and other documents listing the Elizabeth property as his address. We disagree. We generally do not draw an adverse inference from a taxpayer's failure to call any specific witness where the witness is equally available to both parties and neither party calls that witness at trial. Dunlap v. Commissioner, T.C. Memo. 2012-126,

---

[6]We note that petitioner testified that he could be dismissed from his position as a revenue officer with the IRS if he gave untruthful testimony.

[*11] 2012 WL 1524660, at *27; Dang v. Commissioner, T.C. Memo. 2002-117, 2002 WL 977368, at *3. Petitioner's family members and Ms. Lorenzo were equally available to both parties,[7] but respondent failed to call any of them to testify. Accordingly, we refrain from drawing an adverse inference that their testimony would be unfavorable to petitioner. Regarding petitioner's failure to offer as evidence bills or other documents listing petitioner's address as the Elizabeth property, petitioner credibly testified that he had no such documents because he directed all of his mail to the UPS mailbox in order to prevent mail theft and credit card fraud, which we conclude to be a viable explanation in the light of petitioner's testimony regarding his previous experience as a victim of those crimes.

Respondent also contends that petitioner indicated that the Staten Island property was his principal residence when he listed that property as his address on his Form HUD-1 and on his 2006 Federal income tax return. We do not agree. The Form HUD-1 does not indicate petitioner's principal residence because it required him to list only the address of the borrower and not his home address. Moreover, petitioner did not complete his Form HUD-1; instead, petitioner's

---

[7]Ms. Brewer, petitioner's sister, was unavailable for trial because of her new employment.

[*12] realtor completed it on petitioner's behalf in connection with petitioner's purchase of the Avenel property. Regarding petitioner's 2006 Federal income tax return, we find that petitioner's use of the UPS mailbox, which clearly cannot be a "home", as his address on his 2007 Federal income tax return indicates petitioner's general belief that the addresses listed on his Federal income tax returns are not necessarily indicative of his principal residence. Accordingly, we conclude that neither the address listed on the Form HUD-1 nor the one listed on petitioner's 2006 Federal income tax return is conclusive as to petitioner's principal residence.

We find that the best evidence of petitioner's principal residence is his State tax return filings from 2005 to 2008. For his 2005 and 2006 tax years petitioner filed both New Jersey and New York tax returns because he spent some portion of each of the two years residing in each of the two States.[8] For his 2007 and 2008 tax years, petitioner filed only a New Jersey tax return because he resided solely at the Elizabeth property and worked in New Jersey. Accordingly, petitioner's State

---

[8]In 2005, petitioner resided at the Staten Island property in New York and the Elizabeth property in New Jersey. In 2006 petitioner resided at the Brooklyn property in New York and the Elizabeth property in New Jersey. Petitioner testified that he filed a part-year resident 2006 New York tax return because of his brief, three-month residence at the Brooklyn property and not because of his ownership of the Staten Island property.

**[\*13]** tax return filings indicate to us that, after June 2005, the Staten Island property ceased to be his principal residence for purposes of the FTHBC.

Respondent also contends that, on his 2006 and 2007 Federal income tax returns, petitioner claimed deductions for real estate taxes and mortgage interest with respect to the Staten Island property and that this fact should be considered when evaluating whether the Staten Island property was petitioner's principal residence.[9] We decline to do so. A taxpayer is entitled to deduct any interest paid or accrued on acquisition indebtedness or home equity indebtedness with respect to a qualified residence. Sec. 163(h)(3). Pursuant to section 163(h)(4)(A)(i), the term "qualified residence" means:

> (I) the principal residence (within the meaning of section 121) of the taxpayer, and

> (II) 1 other residence of the taxpayer which is selected by the taxpayer for purposes of this subsection for the taxable year and which is used by the taxpayer as a residence (within the meaning of section 280A(d)(1)).

Accordingly, taxpayers may claim deductions for mortgage interest on real property other than a principal residence. Similarly, taxpayers may claim a

---

[9]Respondent also contends that the deductions on petitioner's 2006 and 2007 Federal income tax returns evidence petitioner's ownership interest in the Staten Island property. Respondent's contention lacks merit as petitioner does not deny his ongoing ownership interest in the Staten Island property.

[*14] deduction pursuant to section 164(a)(1) for any "[s]tate and local, and foreign, real property taxes" paid or accrued during the taxable year; there is no requirement for the real property to be the taxpayer's principal residence.  Even though the deductibility of the mortgage interest and real estate taxes is not in issue, we note, without deciding, that it is possible that petitioner may be entitled to such deductions with respect to the Staten Island property regardless of whether the Staten Island property was his principal residence.  Accordingly, we do not consider those deductions as being relevant to the issue of whether the Staten Island property was petitioner's principal residence.[10]

On the basis of the foregoing, we conclude that the Staten Island property was not, at any time after November 19, 2005, petitioner's principal residence for purposes of section 36.  Consequently, pursuant to section 36(c)(1), petitioner qualifies as a first-time homebuyer and is entitled to the FTHBC for his 2008 tax year.[11]

---

[10]Respondent acknowledges the same, as he concedes that "a taxpayer may claim mortgage interest and real estate tax deductions with respect to real property which is not the taxpayer's principal residence, and, thus, that claiming these deductions alone would not disqualify that taxpayer from being considered a first-time homebuyer under [section] 36(c)(1)."

[11]However, as stated above, petitioner has conceded that his State tax refund of $1,106 is taxable and should be included in his 2008 taxable income.

**[\*15]** In reaching these holdings, we have considered all the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.